**Almeda LIBBY and Gilbert Libby**

v.

**CONCORD GENERAL MUTUAL INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Argued Nov. 9, 1982.

Decided Dec. 3, 1982.

William J. Smith (orally), VanBuren, for plaintiff.

Berman, Simmons, Laskoff & Goldberg, P.A., William D. Robitzek (orally), Lewiston, for defendant.

Before McKUSICK, C.J., GODFREY, NICHOLS, ROBERTS, CARTER and WATHEN, JJ., and DUFRESNE, A.R.J.

WATHEN, Justice.

Defendant Concord General Mutual Insurance Company (Concord) appeals from an adverse judgment rendered in the Superior Court (Aroostook County) in an action to reach and apply insurance funds. The plaintiffs premised the action upon allegations that (1) they had recovered a final judgment for approximately $16,000 against one Rodney Carney for personal injury and property damage arising from an automobile accident; (2) the judgment debtor was insured by Concord when the cause of action accrued; and (3) Concord had been given notice of the "accident, injury or damage" before the recovery of judgment. By appropriate motion at each stage of the jury trial Concord challenged the sufficiency of the evidence on the issue of notice required by 24–A M.R.S.A. § 2904 (1969).[1] It was contended that the person to whom notice had been given was not an agent of Concord and therefore plaintiffs had not complied with the notice provision of the statute. The Superior Court justice concluded that sufficient evidence supported the finding of an agency relationship and denied all motions including the final motion for judgment notwithstanding the verdict. We conclude that he erred and we reverse the judgment.

The factual background presents the issue whether William Savary d/b/a William Savary's Insurance Agency is an agent of Concord.

On May 19, 1978, Rodney Carney bought automobile insurance from Mr. Savary. Mr. Savary assisted in completing an "Automobile Insurance Plan Application", which did not designate any particular company as the insurer. At that point, Mr. Savary did not know what insurance company would be assigned as Carney's insurer. Rather, Mr. Carney, as an "assigned risk", was to be assigned to an insurer by the "Automotive Plan" in New York. Shortly after the date of the application, Mr. Carney received a policy through the mail directly from Concord, and Mr. Savary received a card from the Automotive Plan stating that Mr. Carney had been assigned to Concord.

1. 24–A M.R.S.A. § 2904 provides in relevant part:

Whenever any person, administrator, executor, guardian, recovers a final judgment against any other person for any loss or damage specified in section 2903, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment by bringing a civil action, in his own name, against the insurer to reach and apply the insurance money, if when the right of action accrued, the judgment debtor was insured against such liability and if before the recovery of the judgment the insurer had had notice of such accident, injury or damage.

In June of 1978, Mr. Carney's brother, Brian, was involved in an accident with plaintiff Gilbert Libby while operating the insured's vehicle. In December of 1978, after having unsuccessfully attempted to contact the Carneys and their insurance companies, Mr. Libby's attorney commenced an action on behalf of the Libbys against Rodney Carney as his brother's employer. A default judgment was entered, and subsequently damages were assessed after hearing in December of 1979.

In an effort to notify Mr. Carney's insurer prior to the assessment of damages, the attorney obtained a copy of the "48-hour report" of the accident which listed William Savary as Rodney Carney's insurance agent and "Dairyland" as his insurer.[2] He then wrote to Mr. Savary. In a letter dated August 27, 1979, he wrote that "this letter is to give you notice as agent for Dairyland Insurance Company." In another letter, dated August 30, 1979, he suggested that Mr. Savary "report the case to Dairyland." At no time prior to the hearing, however, had the attorney heard from or directly communicated with defendant Concord.

It is undisputed that Mr. Savary was not an *authorized* Concord agent. In fact, he had never directly sold insurance on behalf of Concord. Aside from the initial application, Mr. Savary's contacts with Concord on behalf of Mr. Carney were few: At the time of application, Mr. Savary did tell Mr. Carney to contact him if any problems arose. Mr. Carney recalled making all his payments to Mr. Savary, who in turn took a commission on the sale. Concord sent Mr. Savary "courtesy" copies of major correspondence between it and Mr. Carney. Shortly after the application was made, Mr. Savary, at Mr. Carney's request, forwarded a statement to Concord concerning damage to a "Prentiss Loader" of Mr. Carney's, for which Mr. Carney was eventually paid by Concord. Mr. Savary's only involvement in the processing of that claim, however, was the initial notification to the company at Mr. Carney's request. In April, 1979, also at Mr. Carney's request, Mr. Savary wrote

to Concord asking that they add a new pick-up truck to the existing policy and that they forward a claim form so that Mr. Carney could report the damage to his loader. The report of loss was acknowledged by letter to Carney.

In reviewing the trial court's denial of the motion for judgment notwithstanding the verdict, this Court must view the evidence in the light most favorable to the plaintiffs and the verdict must stand unless manifestly wrong. *George v. Guerette,* 306 A.2d 138, 145 (Me.1973).

There is no dispute in this case that the underlying judgment for damages was recovered in December of 1979 and that Concord did not learn of the claim until May of 1980. Plaintiffs, however, attempt to characterize Mr. Savary as Concord's common-law agent and argue that as such the jury could reasonably have found that the attorney's notice to Mr. Savary in August of 1979 constituted sufficient notice to Concord to satisfy section 2904. We disagree.

Agency is the fiduciary relationship "which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Defosses v. Notis,* 333 A.2d 83, 86 (Me.1975). The relationship of agency, however, may be either "actual" or "apparent" in its derivation. *Stevens v. Frost,* 140 Me. 1, 7, 32 A.2d 164, 167 (1943). Moreover, there are two types of *actual* authority— express authority or implied authority; both are to be distinguished from apparent authority. *Id.,* 32 A.2d at 168. Having reviewed the record evidence in this case, we find that there is insufficient evidence to support a finding of an agency relationship between Mr. Savary and Concord under any of these theories.

It is undisputed that there was no express authority in this case. Express authority is "that authority which is directly granted to or conferred upon the agent . . . in express terms by the principal . . . ." *Id.*

---

2. At the time of the incident, Dairyland was the insurer for Brian Carney.

Mr. Savary testified that he had never been an authorized agent for Concord.[3]

■■■ Implied authority, however, is "actual authority circumstantially proven from the facts and circumstances attending the transaction in question." *Id.,* 140 Me. at 10, 32 A.2d at 168. Such power may be "implied or inferred from the words used, from customs and from the relations of the parties." Restatement (Second) of Agency § 7, comment c (1958). Implied authority, therefore, like express authority, depends on a manifestation of consent *by the principal,* and goes to the perceptions of the *agent* not the third party.

The only communications which Concord is said to have initiated with Mr. Savary were the routinely sent copies of various correspondence sent to Mr. Carney, and the claim form which Mr. Savary had requested. Aside from these communications, Concord dealt directly with Mr. Carney. There is no additional evidence that Concord acted so as to indicate to Mr. Savary that he was its agent, much less responsible for notifying it of pending legal actions. Moreover, there is no evidence that he had ever perceived himself in that capacity. Mr. Savary's status originated and remained that of agent/broker for Mr. Carney. Mr. Savary's communications with Concord—processing the Prentiss Loader claim, requesting claim forms, seeking to add another vehicle to the policy—were all efforts on the *insured's* behalf.

■■ Finally, "apparent" authority is "that which, though not actually granted, the principal knowingly permits the agent to exercise or which he holds him out as possessing." *Stevens,* 140 Me. at 7, 32 A.2d at 167–68. Apparent authority exists only when the "*conduct of the principal* leads a third person to believe that a given party is his agent." *Brown v. Manchester,* 384 A.2d 449, 453 n. 4 (Me.1978) (emphasis in original) (citing Restatement (Second) of Agency § 8 (1958)).

In the present case, plaintiffs argue facts that might suggest such authority. On various of its forms sent to Mr. Carney (the notice of nonpayment, statement of coverage and acknowledgment of payment), Concord listed Mr. Savary under the caption of "agent." The latter two forms also contained a printed suggestion directed at the insured to contact "agent" with respect to any questions. Additionally, Mr. Savary had successfully processed a prior claim (the Prentiss Loader) for Mr. Carney. Nevertheless, in light of all the evidence, these facts remain inadequate to support a finding of apparent authority.

Again, Mr. Savary's filing of the Prentiss Loader claim was on behalf of the insured not the insurer. Once that claim was filed, all further communications were between Concord and Mr. Carney. The listing of Mr. Savary as "agent" on various forms is similarly an unreasonable basis to find the requisite agency relationship. Those same forms direct the reader to contact "*your* agent" in case of any questions. We interpret this to mean *buyer's* agent. Mr. Savary was Mr. Carney's agent. Additionally, the initial insurance application, although not issued by Concord, was signed by both Mr. Savary and Mr. Carney, and expressly disclaimed any such agency relationship.

> I designate as producer of record for the insurance the producer or firm named in this application and I understand he is not acting as an agent of any Company for the purpose of this insurance.

---

3. 24–A M.R.S.A. § 2422 (1969) provides in part:

> 1. An agent authorized by an insurer, if the name of such agent is borne on the policy, is the insurer's agent in all matters of insurance. Any notice required to be given by the insured to the insurer or any of its officers may be given in writing to such agent.

Despite defendant's arguments, the trial court did not construe section 2422 as limiting the terms of notice in section 2904. Moreover, it is unclear whether Mr. Savary was an "agent" at all within the terms of the statute or, rather, a "broker." *Compare* 24–A M.R.S.A. § 1502 (1969), 24–A M.R.S.A. § 1506 (1969). Regardless, the trial justice properly distinguished "agent" as used in section 2422 from notions of common law agency sufficient to satisfy "notice" in section 2904.

Moreover, apparent authority exists only with regard to those who believe and have reason to believe that there is such authority. There can be no apparent authority created by an undisclosed principal. *See* Restatement (Second) of Agency § 8, comment a (1958). The plaintiffs apparently were unaware of Concord's existence until months after they had recovered final judgment against Mr. Carney. Indeed, at all relevant times plaintiffs believed that Mr. Savary was an agent for Dairyland Insurance Company. Therefore, it was unwarranted for the jury to have found that Concord had acted in such a way as to make plaintiffs believe that Mr. Savary was its agent.

Since the evidence was insufficient to support a finding of either actual or apparent authority, we conclude that the presiding justice erred in denying the motion for judgment notwithstanding the verdict. It is therefore unnecessary to address the other points raised by defendant on appeal.

Judgment vacated.

Remanded for entry of judgment for defendant.